UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| GARY ZAGAMI, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 6:24-cv-01395-ECC-MJK |
|  | : | <u>CLASS ACTION</u> |
| Plaintiff, | : |  |
|  | : |  |
| vs. | : |  |
|  | : |  |
| WOLFSPEED, INC., GREGG A. LOWE, and NEILL P. REYNOLDS, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : | <u>ORAL ARGUMENT REQUESTED</u> |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANTS' MOTION TO TRANSFER VENUE</u>**

**TABLE OF CONTENTS**

                                                   **Page**

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND ..................................................................................3

III.    ARGUMENT.........................................................................................................5

        A.      Legal Standard ..........................................................................................5

        B.      Defendants Have Not Satisfied Their Burden of Establishing the Propriety of the Requested Transfer ..........................................................................5

                1.      Plaintiffs' Choice of Forum Should Not Be Disturbed..............................5

                2.      Convenience of the Witnesses Does Not Favor Transfer ...........................7

                3.      Convenience of the Parties Does Not Favor Transfer ..............................11

                4.      Defendants Fail to Show that the Locus of Operative Facts Favors Transfer ................................................................................................14

                5.      The Location of Relevant Documents and Ease of Access to Sources of Proof Do Not Favor Transfer......................................................................18

                6.      Availability to Compel Unwilling Witnesses Does Not Favor Transfer ................................................................................................19

                  7.      The Relative Means of the Parties Do Not Favor Transfer .......................19

                  8.      The Relative Familiarity of the Fora with the Governing Law Does Not Favor Transfer....................................................................................20

                  9.      Trial Efficiency and the Interests of Justice Do Not Favor Transfer.........20

IV.    CONCLUSION...................................................................................................21

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Accantia Grp. Holdings v. Food Mkt. Merch., Inc.*,
908 F. Supp. 2d 439 (S.D.N.Y. 2012)........................................................................6

*Aerotel, Ltd. v. Sprint Corp.*,
100 F. Supp. 2d 189 (S.D.N.Y. 2000)......................................................................19

*Ahrens v. CTI Biopharma Corp.*,
2016 WL 2932170
(S.D.N.Y. May 19, 2016)..........................................................................................16

*Bucks Cnty. Emps. Ret. Sys. v. Norfolk S. Corp.*,
2023 WL 5992266
(S.D. Ohio Sept. 15, 2023)........................................................................................16

*City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*,
2015 WL 12659925
(S.D.N.Y. Apr. 30, 2015)..........................................................................................16

*City of Warren Police & Fire Retirement System v. Zebra Technologies Corp.*,
2019 WL 3997354
(E.D.N.Y. Aug. 23, 2019).........................................................................................17

*Cohn v. Metro. Life Ins., Co.*,
2007 WL 1573874
(S.D.N.Y. May 31, 2007)..........................................................................................18

*Colour & Design v. U.S. Vinyl Mfg. Corp.*,
2005 WL 1337864
(S.D.N.Y. June 3, 2005)............................................................................................19

*Diamond Collection, LLC v. Underwraps Costume Corp.*,
2017 WL 3130323
(E.D.N.Y. July 21, 2017) ..........................................................................................20

*DiRienzo v. Philip Servs. Corp.*,
294 F.3d 21 (2d Cir. 2002).....................................................................................6, 7

*EasyWeb Innovations, LLC v. Facebook, Inc.*,
888 F. Supp. 2d 342 (E.D.N.Y. 2012) .....................................................................18

*Erickson v. Corinthian Colls., Inc.*,
2013 WL 5493162
(S.D.N.Y. Oct. 1, 2013) ............................................................................................16

*Funke v. Life Fin. Corp.*,
2003 WL 194204
(S.D.N.Y. Jan. 28, 2003)......................................................................................................7, 15

*Garity v. Tetraphase Pharms. Inc.*,
2019 WL 2314691
(S.D.N.Y. May 30, 2019)........................................................................................................16

*Guardian Life Ins. Co. of Am. v. Hernandez*,
2011 WL 3678134
(S.D.N.Y. Aug. 22, 2011) .......................................................................................................18

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947)...............................................................................................................3, 5

*In re Ambac Fin. Grp., Inc.*,
487 F. App'x 663 (2d Cir. 2012) ............................................................................................20

*In re AtheroGenics Sec. Litig.*,
2006 WL 851708
(S.D.N.Y. Mar. 31, 2006) .......................................................................................................16

*In re Cuyahoga Equip. Corp.*,
980 F.2d 110 (2d Cir. 1992)..................................................................................................5, 21

*In re Energy Transfer Sec. Litig.*,
2022 WL 17477854
(S.D.N.Y. Nov. 7, 2022) .........................................................................................................15

*In re Geopharma, Inc. Sec. Litig.*,
2005 WL 1123883
(S.D.N.Y. May 11, 2005)................................................................................................. *passim*

*In re Glenayre Technologies, Inc. Securities Litigation*,
982 F. Supp. 294 (S.D.N.Y. 1997)..........................................................................................13

*In re Glob. Cash Access Holdings, Inc. Sec. Litig.*,
2008 WL 4344531
(S.D.N.Y. Sept. 18, 2008) .................................................................................................16, 21

*In re Hanger Orthopedic Grp., Inc. Sec. Litig.*,
418 F. Supp. 2d 164 (E.D.N.Y. 2006) ................................................................................16, 17

Case 1:26-cv-00018-LAF-LPA     Document 61     Filed 07/07/25     Page 4 of 28

*In re Nematron Corp. Sec. Litig.*,
30 F. Supp. 2d 397 (S.D.N.Y. 1998)..................................................................................17

*Iragorri v. United Techs. Corp.*,
274 F.3d 65 (2d Cir. 2001)................................................................................................6

*Manchin v. PACS Grp., Inc.*,
2025 WL 1276569
(S.D.N.Y. May 1, 2025)............................................................................................. *passim*

*Mastercard Int'l, Inc. v First Nat'l Bank of Omaha, Inc.*,
2002 WL 31521091
(S.D.N.Y. Nov. 12, 2002) ................................................................................................15

*Mazuma Holding Corp. v. Bethke*,
1 F. Supp. 3d 6 (E.D.N.Y. 2014) ..........................................................................10, 18, 21

*Micromuse, Inc. v. Aprisma Mgmt. Techs., Inc.*,
2005 WL 1241924
(S.D.N.Y. May 24, 2005).................................................................................................15

*N. Brevard Cnty. Hosp. Dist. v. C.R. Bard, Inc.*,
648 F. Supp. 3d 401 (N.D.N.Y. 2022)........................................................................15, 16

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
599 F.3d 102 (2d Cir. 2010)...............................................................................................5

*Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*,
6 F. Supp. 2d 203 (S.D.N.Y. 1998)...........................................................................5, 6, 13

*SBAV LP v. Porter Bancorp, Inc.*,
2013 WL 3467030
(S.D.N.Y. July 10, 2013) ................................................................................................16

*SEC v. KPMG, LLP*,
2003 WL 1842871
(S.D.N.Y. Apr. 9, 2003)..............................................................................................14, 21

*SEC v. Milton*,
2022 WL 3156180
(S.D.N.Y. Aug. 8, 2022) .............................................................................................15, 20

*SEC v. Yaroshinsky*,
 2006 WL 8459557
 (S.D.N.Y. Oct. 5, 2006) ...............................................................................9, 10, 14, 15

*Stewart Org., Inc. v. Ricoh Corp.*,
 487 U.S. 22 (1988)...........................................................................................................5

*Tomita Techs. USA, LLC v. Nintendo Co., Ltd.*,
 818 F. Supp. 2d 770 (S.D.N.Y. 2011)...........................................................................12

*Ye Olde Time Keepers, Inc. v. C.R. Martin Auctioneers, Inc.*,
 2018 WL 1832930
 (E.D.N.Y. Apr. 17, 2018)...............................................................................................19

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
 §78aa ..............................................................................................................................6
 §78u-4(b)(3)(B)...............................................................................................................9

28 U.S.C.
 §1391(b)...........................................................................................................................6
 §1404(a) ...............................................................................................................1, 10, 14

Federal Rules of Civil Procedure
 Rule 26 .............................................................................................................................9

Private Securities Litigation Reform Act of 1995
 Pub. L. No. 104-67, 109 Stat. 737 (1995).......................................................................9

**SECONDARY AUTHORITIES**

Christine Hurt & Paul Stancil, *Short Sellers, Short Squeezes, and Securities Fraud*
 47 J. Corp. L. 105, 113 (2021) ......................................................................................13

Lead Plaintiffs Qiu Shaomei, He Jie, Cai Guangjian, and Dr. Syed M. Alam, and plaintiff William Maizner (collectively, "Plaintiffs") respectfully submit this opposition to the motion to transfer venue pursuant to 28 U.S.C. §1404(a), filed by Defendants Wolfspeed, Inc. ("Wolfspeed" or the "Company"), former Chief Executive Officer Gregg A. Lowe ("Lowe"), and former Chief Financial Officer Neill P. Reynolds ("Reynolds") (Lowe and Reynolds, together, the "Individual Defendants" and, with Wolfspeed, "Defendants"). As explained herein, this case is properly before this Court, Defendants have not met their heavy burden, and Defendants' motion should be denied.

## I. INTRODUCTION

Presently pending before the Court is Defendants' motion to transfer this consolidated securities class action on behalf of purchasers of Wolfspeed securities during the period between August 16, 2023 and November 6, 2024, inclusive (the "Class Period"), from the Northern District of New York to the Middle District of North Carolina.

Defendants primarily argue that because Wolfspeed's headquarters is based in North Carolina, the case should be litigated there. This case, however, centers around the production capabilities of Wolfspeed's Mohawk Valley silicon carbide fabrication facility ("MVF") in Marcy, New York—located in this District—and Defendants' alleged misrepresentations and omissions about that subject. Defendants grossly downplay the Complaint's extensive allegations that the conduct underlying the fraud occurred at MVF, and that operational data from MVF formed the basis for the misstatements at issue in this case.[1] Thus, key witnesses and documents are located in this District, and this District is the center of gravity of Plaintiffs' allegations. Defendants gloss over these allegations because to do otherwise would contravene the basis for their motion.

---

[1] References to "Complaint" or "¶__" are to the Consolidated Amended Complaint (ECF No. 57). References to "Def. Br." are to the Memorandum of Law in Support of Defendants' Motion to Transfer Venue (ECF No. 59-1). Internal citations and quotations are omitted and emphasis is added unless otherwise noted.

In essence, Defendants' position is that a securities fraud action must always be litigated in the district where the defendant issuer is headquartered regardless of the locus of the underlying fraudulent conduct, the allegations in the complaint, and the plaintiffs' appropriate choice of venue. That is not the law. "There is no per se rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered. . . . Ultimately, the transfer inquiry demands an individualized inquiry rather than application of any categorical rule granting transfer for certain types of cases." *Manchin v. PACS Grp., Inc.*, 2025 WL 1276569, at *7 (S.D.N.Y. May 1, 2025).

Where, as here, Plaintiffs have chosen a proper venue for their action, their choice of venue is entitled to deference. Such deference is especially warranted here, where this District's strong nexus to the crucial events underlying this action demonstrates that Plaintiffs' choice of this District is legitimate. Although Wolfspeed's SEC filings and earnings calls may have been prepared and held at the Company's headquarters, it was Defendants' inability to achieve 20% utilization at MVF that made those statements materially false and misleading.

The burden to Defendants of litigating in this District, if any, would be minimal. The Individual Defendants and other Wolfspeed employees who may have relevant information can all be deposed in North Carolina and would not have to travel to New York at all during this litigation, except in the unlikely event this case proceeds to trial. On the other hand, Wolfspeed employees who work at MVF are in this District, and counsel for both Plaintiffs and Defendants are based in New York. Moreover, during the Class Period, Lowe touted the amount of time he spent at MVF, and Reynolds occasionally worked remotely from New York City where he maintains an apartment, belying any argument that this District is inconvenient.

Most importantly, Wolfspeed's recent decision to file a bankruptcy petition in Texas, where it is neither headquartered nor incorporated, eviscerates any argument that litigating in this District is inconvenient for the Company. It shows, without question, that Wolfspeed is not genuinely concerned about the inconvenience of litigating outside of North Carolina and is fully capable of doing so when it suits its needs.

The Middle District of North Carolina is not a more appropriate forum to bring this action and Defendants have not met their high burden to justify transfer, which must be "strongly in favor" of transfer. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Defendants' motion should be denied in its entirety.

## II. FACTUAL BACKGROUND

On April 25, 2022, Wolfspeed announced the opening of its much-anticipated MVF facility in Marcy, New York. ¶5. The Company touted MVF as the world's largest 200mm silicon carbide fabrication facility. *Id.* By early 2023, Defendants explained to investors that because of "overwhelming" and "rapidly growing" demand in the electric vehicle ("EV") market that far outpaced the Company's then-current production capabilities, the production "ramp" of MVF was critical to the Company's success, stating that "bringing on supply is really the critical focus" and "our growth will be governed by how quickly we ramp 200-millimeter substrate capacity and, in turn, the Mohawk Valley fab[.]" ¶6.

In April 2023, Defendants told investors that MVF would reach 20% utilization by the June 2024 quarter, which would translate into $100 million in revenue in the December 2024 quarter. ¶7. During the next several quarterly earnings calls, Defendants announced that MVF was not experiencing any problems and was "on track" to achieve their utilization and revenue targets. ¶8. On June 24, 2024, Defendants announced that MVF had achieved 20% utilization. *Id.*

- 3 -

In truth, MVF never achieved anything close to 20% capacity utilization. ¶10. According to former employees who worked as an Accounting Director and a Financial Analyst and reviewed the Company's profit and loss statements and conducted financial reviews—which included information on MVF's utilization—MVF was not "getting to the level of volume" "quickly enough," "w[as] far behind where [management] expected it to be," and by September 2024 was only at about 10% utilization. *Id.*; *see also* ¶57. In addition, according to these former employees, by January 2024, the demand for Wolfspeed's products, including from the EV market, had plummeted. ¶¶10, 67. And by June 2024, "there was definitely a lot of panic setting in" because "sales were falling and falling quick" and "orders were falling quick . . . across the board, in every business unit." ¶¶10, 69.

After a series of partial disclosures of the truth about Wolfspeed's overstated growth potential, the Company's stock price declined. ¶¶11-14. Then, on November 6, 2024, Wolfspeed announced its financial results for the first quarter of fiscal year 2025[2] and unveiled guidance for the second quarter well below expectations. ¶15. Although Defendants had repeatedly claimed that 20% utilization of MVF would result in $100 million of revenue out of the facility, Defendants now guided to a range 30% to 50% below that mark. *Id.* The Company attributed its results and lowered guidance to "demand . . . ramp[ing] more slowly than we originally anticipated" as "EV customers revise their launch time lines as the market works though this transition period." *Id.* As a result of the revealed poor prospects, the Company was forced to take drastic steps, including laying off 20% of its workforce, shutting down its Durham, North Carolina facility, and scrapping plans for a $3 billion plant in Germany. *Id.* Wolfspeed's stock price fell more than 39% in response. ¶16.

---

[2]     Wolfspeed's first quarter of fiscal year 2025 ended on September 30, 2024. *See* ¶7 n.1.

### III. ARGUMENT

#### A. Legal Standard

Defendants bear the "burden of making out a strong case for transfer." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). "It is therefore appropriate that the district courts in [the Second] Circuit have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion." *Id.* (collecting cases). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil*, 330 U.S. at 508.

"[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Courts have generally examined the following factors when considering a motion to transfer venue: (1) the plaintiff's choice of forum; (2) the convenience of witnesses; (3) the convenience of the parties; (4) the locus of operative facts; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the availability of process to compel the attendance of unwilling witnesses; (7) the relative means of the parties; (8) the relative familiarity of the fora with the governing law; and (9) trial efficiency and the interests of justice. *See Manchin*, 2025 WL 1276569, at \*4. As detailed below, a review of these factors makes clear that Defendants have not carried their burden on this motion, and the motion to transfer venue should be denied.

#### B. Defendants Have Not Satisfied Their Burden of Establishing the Propriety of the Requested Transfer

##### 1. Plaintiffs' Choice of Forum Should Not Be Disturbed

A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of factors is strongly in favor of the defendant. *See Orb Factory, Ltd. v.*

*Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 210 (S.D.N.Y. 1998). "The burden of demonstrating the desirability of transfer lies with the moving party, and in considering the motion for transfer, a court should not disturb a plaintiff's choice of forum unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice." *Accantia Grp. Holdings v. Food Mkt. Merch., Inc.*, 908 F. Supp. 2d 439, 441 (S.D.N.Y. 2012). As Defendants do not dispute, venue is proper in the Northern District of New York under applicable federal securities laws. *See* 15 U.S.C. §78aa; 28 U.S.C. §1391(b).

Defendants argue that Plaintiffs' choice of forum is entitled to minimal deference because Plaintiffs seek to represent a nationwide class. *See* Def. Br. at 7-8. Although Plaintiffs' choice may be accorded slightly less weight in a class action, "[a]ffording less deference to representative plaintiffs does not mean they are deprived of all deference in their choice of forum." *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002); *In re Geopharma, Inc. Sec. Litig.*, 2005 WL 1123883, at *1 (S.D.N.Y. May 11, 2005) (according deference to plaintiffs' choice of forum in class action and holding that to upset that choice, defendants have to make a "convincing showing"). Plaintiffs are still accorded deference in their choice of venue when representing a class.

The plaintiff's choice of forum also "is generally accorded more deference" where "there is a material connection or significant contact between the forum state and the underlying events allegedly underlying the claim." *Manchin*, 2025 WL 1276569, at *8. The Second Circuit has instructed that a plaintiff's choice of forum is to be afforded greater deference when "it was motivated by legitimate reasons, including the plaintiff's convenience . . . and diminishing deference . . . to the extent that it was motivated by tactical advantage." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001); *see also DiRienzo*, 294 F.3d at 28 (where "plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given

- 6 -

to the plaintiff's forum choice"); *Funke v. Life Fin. Corp.*, 2003 WL 194204, at \*3 (S.D.N.Y. Jan. 28, 2003) ("[T]hat the chosen forum is not where the plaintiffs are domiciled . . . does not necessarily mean the choice is afforded less deference; as long as the choice was for legitimate reasons, it is to be respected."). Plaintiffs legitimately chose the Northern District of New York because: (i) the conduct underlying the fraud occurred in this District (*see supra* at 3-4; *infra* at 8-9); (ii) Lowe traveled to this District frequently during the Class Period to monitor MVF's operations; (iii) Plaintiff Maizner resides in Dix Hills, New York, located within the Eastern District of New York (¶20);[3] (iv) the Company's stock trades on the NYSE, located in the neighboring Southern District of New York ("S.D.N.Y."); and (v) securities analysts and commentators that covered the Company are located in New York. *See* Declaration of Alan I. Ellman in Opposition to Defendants' Motion to Transfer Venue, submitted herewith ("Ellman Decl.") ¶6. Defendants inexplicably argue "there is no meaningful connection between the claims at issue and this District," Def. Br. at 8, but they utterly ignore the allegations. Accordingly, this factor weighs against transfer.

### 2. Convenience of the Witnesses Does Not Favor Transfer

Defendants argue that North Carolina is more convenient for non-party witnesses than this District because "the important witnesses likely will be those current and former Wolfspeed employees with key responsibilities related to the Company's public disclosures and financial projections during the Class Period," and "[t]hose employees overwhelmingly are located in" North Carolina. Def. Br. at 9-10. This argument fails.

First, Defendants incorrectly assume that the important witnesses in this case will be in North Carolina. Defendants overlook the core of Plaintiffs' allegations: that they misrepresented to

---

[3] Defendants argue, without any support whatsoever, that Maizner was named in the Complaint as a plaintiff "likely to bolster the appearance of a connection to New York[.]" Def. Br. at 8 n.3. Defendants cannot have it both ways: they proclaim that the Lead Plaintiffs do not reside in New York but also complain that one of the original plaintiffs does.

investors the Company's ability to achieve 20% utilization at MVF.[4]  As alleged in the Complaint, the Mohawk Valley facility and its operations were the central focus of Defendants' alleged misstatements and the key to Wolfspeed's future profitability, as demonstrated by statements made by the Individual Defendants and securities analysts:

- Lowe: "We've said time and time again that all roads lead to Mohawk Valley. . . . I spent a lot of time at Mohawk Valley this past quarter and witnessed the dedication of our team firsthand."  ¶¶129, 132.

- Reynolds: "The key driver here, as we have talked about, is just ramping the revenue to $100 million by December quarter coming out of Mohawk Valley."  ¶136.

- Reynolds: "Our expectation is we're going to see a lot more revenue at Mohawk Valley coming forward as Durham starts to come down during the next 9 to 12 months."  ECF No. 1 ¶38.[5]

- Piper Sandler Co. analyst: "It's pretty clear that your future growth of the company lies with Mohawk Valley[.]"  ¶198; *see also id*. (collecting analyst comments emphasizing the importance of MVF to Wolfspeed's success).

These allegations will require substantial discovery from individuals who worked at Wolfspeed in this District, undercutting Defendants' argument that all of the relevant witnesses are

---

[4]     In an attempt to downplay the centrality of MVF to this lawsuit, Defendants assert that "financial projections related to the MVF are the subject of **certain** challenged statements." Def. Br. at 1 (citing three alleged misstatements); *see also id*. at 12.  In fact, MVF is the subject of nearly **every** challenged statement.  *See* ¶¶105-156.

[5]     *See also, e.g.*, ¶171 ("[Y]ields in Mohawk Valley ahead of plan; the economics of Mohawk Valley substantially more compelling than Durham."); ¶172 ("I think it's a real testament to the amount of revenue we can absorb through Mohawk Valley when you start making that trade from 150-millimeter to 200-millimeters.  So I think here, in the medium term, if we go down that path, I think Mohawk Valley will have significant capability to absorb a lot of that revenue."); ¶177 ("Mohawk Valley has now turned into a very good asset for us in terms of production quality, yield, et cetera.  Feeding Mohawk Valley out of Building 10 has also substantially increased.  We announced that we hit 20% utilization in Mohawk Valley and that's because Building 10 was able to deliver the material to them.").

in North Carolina.  At this preliminary stage of the litigation,[6] Plaintiffs have identified several

potential key witnesses who worked at MVF to support their claims, including the following:

- Michael Welch, CPA – Assistant to the Controller, Fab Finance.  Mr. Welch has worked at Wolfspeed in Marcy, New York from January 2022 to the present, and describes his responsibilities as: "Managed $200M in operating expenses, optimizing utilization calculations from 0% to 20% capacity to drive margin analysis," and "Developed financial models to track $2.1B in capital, cash flow, and depreciation, enhancing financial forecasting."  *See* Ellman Decl. Ex. 1 (attaching LinkedIn profile), *id*. ¶2.

- Neil Reitmeyer – Director of Operations, Mohawk Valley Fab at Wolfspeed.  Mr. Reitmeyer has worked at Wolfspeed in Marcy, New York as Director of Operations from August 2022 to the present, and as Fab Operations Manager from November 2020 to August 2022.  *See* Ellman Decl. Ex. 2, *id*. ¶3.

- Doug Collignon – Sr. Fab OPs Manager – Mohawk Valley Fab.  Mr. Collignon has worked at Wolfspeed in Marcy, New York as Sr Fab OPs Manager – Mohawk Valley Fab from August 2023 to the present, and as Production Control Manager from May 2021 to August 2023.  *See* Ellman Decl. Ex. 3, *id*. ¶4.

- Nick O'Donnell – Wafer Fab Production Manager.  Mr. O'Donnell has worked at Wolfspeed in Marcy, New York as Wafer Fab Production Manager from August 2023 to the present, and as Operations Flow Engineer from July 2022 to August 2023.  *See* Ellman Decl. Ex. 4, *id*. ¶5.

In addition, Defendants' proffered declaration lists Jim Oerth, Vice President, Operations at MVF—

who resides in this District—as a potential relevant witness.  *See* Declaration of Kevin Speirits in

Support of Defendants' Motion to Transfer Venue (ECF No. 59-2, "Speirits Decl.") ¶17(j).

Given Plaintiffs' allegations that the activities at MVF are critical to their claims, the

witnesses in this District are arguably the most important witnesses, and their convenience should be

paramount.  *See SEC v. Yaroshinsky*, 2006 WL 8459557, at *3 (S.D.N.Y. Oct. 5, 2006) ("The

---

[6] Importantly, discovery in this action is stayed pursuant to the Private Securities Litigation Reform Act ("PSLRA"), *see* 15 U.S.C. §78u-4(b)(3)(B), and the parties have not yet exchanged witness lists in connection with their F.R.C.P. 26 initial disclosures.  Thus, Plaintiffs have very limited visibility into the personnel who work at MVF.  Likewise, the fact that the Complaint cites the allegations of two former Wolfspeed employees who worked in the Company's North Carolina headquarters does not diminish the importance of witnesses who reside in this District, as Plaintiffs' investigation has been constrained by the discovery stay.  *Cf*. Def. Br. at 4.

convenience of party and nonparty witnesses is the most important factor to be considered for a venue transfer motion."). In weighing this factor, "a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 30 (E.D.N.Y. 2014). Nor does the existence of witnesses who worked in North Carolina during the relevant period alter the analysis. "Where potential witnesses are located across the country, the Court may find the convenience of witnesses factor to be neutral." *Yaroshinsky*, 2006 WL 8459557, at *3. Further, Plaintiffs will take the deposition of those witnesses in the districts where they live.

Second, the Speirits Declaration only generically describes the subject of those witnesses' testimony and fails to "indicate whether such testimony would be material." *Mazuma*, 1 F. Supp. 3d at 30; *see* Speirits Decl. ¶17. To support its motion, the moving party must submit "an affidavit containing detailed factual statements explaining why the transferee forum is more convenient, including the potential principal witnesses expected to be called and a general statement of the substance of their testimony." *Mazuma*, 1 F. Supp. 3d at 30. In a §1404(a) analysis, "the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Id*. While Defendants identify the subjects of the anticipated testimony, they do not explain whether or how that testimony pertains to MVF's place in Wolfspeed's financial projections. The Speirits Declaration merely describes the substance of the witnesses' testimony as follows: "the primary individuals who most likely will have knowledge concerning Wolfspeed's SEC filings, financial projections, and earnings calls." Speirits Decl. ¶17. Defendants make no attempt to tie the generic subject of "SEC filings, financial projections, and earnings calls" to the allegations in the Complaint, or explain whether the enumerated witnesses have any material knowledge of information involving

- 10 -

MVF.  On the other hand, the witnesses who worked at MVF in this District have direct and material knowledge of MVF's performance, which is at the core of this case.[7]

As for likely witnesses such as Wolfspeed's current employees, they can be compelled to testify by their employer.  *See Manchin*, 2025 WL 1276569, at *11 ("The persons identified by the . . . Defendants are all current employees, and although the convenience of party witnesses is 'not wholly insignificant,' it does not weigh as heavily as inconvenience to non-party witnesses.").  Indeed, Defendants only identify one former employee in their declaration aside from the Individual Defendants.[8]  *See* Speirits Decl. ¶17.  Accordingly, this factor weighs against transfer or is neutral.

### 3. Convenience of the Parties Does Not Favor Transfer

The convenience of the parties also weighs in favor of the Northern District of New York.  Wolfspeed and the Individual Defendants will be inconvenienced only minimally, if at all, by this action continuing in this District.  The Speirits Declaration does not articulate any inconvenience to Defendants from litigating this action in this District.  It does not claim that Defendants' ability to conduct their normal business activities would be disrupted, nor have Defendants made a showing that the distance of Wolfspeed's headquarters to this Court poses difficulties.  *See Geopharma*, 2005 WL 1123883, at *3 (finding that defendants' headquarters in the Middle District of Florida did not pose enough difficulties to overcome plaintiff's choice of the S.D.N.Y. as the venue for the action).

Defendants argue in their brief that transferring the case to North Carolina "would significantly reduce the burden, cost, and travel time" required for them, "while imposing no additional burden on Plaintiffs."  Def. Br. at 9.  This argument is disingenuous because Lowe

---

[7]  Defendants' description of witnesses involved with Wolfspeed's internal controls over financial reporting is a red herring.  *See* Speirits Decl. ¶15; Def. Br. at 11.  The Complaint does not make any allegations about Wolfspeed's internal controls.

[8]  In addition, numerous analysts and securities commentators that covered the Company are located in New York.   Ellman Decl. ¶6; *see Geopharma*, 2005 WL 1123883, at *2.

traveled to this District numerous times during the Class Period. *See* ¶120 (Lowe: "As I mentioned [I] was in the fab last week. I will be in fab 2 more times in November, including on Thanksgiving Day to continue the focus of Mohawk Valley Ramp to 20% utilization."); ¶132 (Lowe: "I spent a lot of time at Mohawk Valley this past quarter and witnessed the dedication of our team firsthand."); ¶177 (Lowe: "getting the operations [at MVF] in better shape" has "been a very, very key focus of me. I've been in Mohawk Valley. I've been in our materials factories pretty consistently during this time."). Reynolds "occasionally worked remotely from New York City where he maintains an apartment," Speirits Decl. ¶11, and he did not even reside in North Carolina during the Class Period—Reynolds resided in Texas, and he currently resides there as well.[9] *See id*. ¶11; Def. Br. at 3. In addition, Lowe participated in an earnings call during the Class Period from New York City, *see* Speirits Decl. ¶13, and Lowe and Reynolds attended the Citi Global TMT Conference during the Class Period in New York City. *Id*. ¶14. Thus, when it was in Lowe's and Reynolds' interests to come to New York during the Class Period, they had no problem doing so. Only now, when faced with a securities fraud lawsuit, do they claim that it would inconvenience them. *See Manchin*, 2025 WL 1276569, at \*12 (defendants' assertion that a lawsuit in New York might disrupt company's business operations "by requiring its executives to fly to this forum . . . strains credulity" because, *inter alia*, "at least some of the relevant executives travel to New York for business and own private jets that could minimize disruption"); *see also Tomita Techs. USA, LLC v. Nintendo Co., Ltd.*, 818 F. Supp. 2d 770, 772 (S.D.N.Y. 2011) ("travel has become cheaper and easier. Where multinational corporations compete over venue in cases that transcend borders, consideration of convenience to witnesses often devolves into an absurd comparison of the costs and durations of a few flights.").

---

[9]    The Speirits Declaration states that Reynolds "has accepted a new employment position and plans to move to North Carolina in connection with that position in late 2025," Speirits Decl. ¶11, but provides no basis for that statement.

- 12 -

The fact that wholly refutes Wolfspeed's claim of inconvenience, however, is its recent bankruptcy filing in the Southern District of Texas, Houston Division. *See In re: Wolfspeed, Inc.*, Case No. 4:25-BK-90163-CML (Bankr. S.D. Tex.) (filed June 30, 2025), ECF No. 1. Wolfspeed is neither headquartered nor incorporated in Texas, so it chose to file for bankruptcy there for strategic reasons that benefited the Company. The distance from Wolfspeed's headquarters to Houston is **double** the distance to this Court. *See* Ellman Decl. ¶7. Wolfspeed clearly has no trouble litigating far from home. Its argument about inconvenience should be rejected outright.

Defendants and their witnesses will not suffer any inconvenience in deposition discovery because Plaintiff's counsel will take their depositions wherever they reside, *see Orb Factory*, 6 F. Supp. 2d at 209 ("deposition testimony is an available alternative to live testimony"), and jury trials in securities class actions are exceedingly rare.[10] In *In re Glenayre Technologies, Inc. Securities Litigation*, the court denied the defendants' motion to transfer from the Western District of North Carolina to the S.D.N.Y., reasoning: "the Court cannot accept their argument that trial in New York would be exceptionally disruptive to the Company. Depositions of relevant persons can take place in North Carolina, documents can be copied and shipped to New York as easily as to an office in North Carolina and the New York based defendants (and plaintiffs) have a right to have the case litigated in this forum." 982 F. Supp. 294, 300 (S.D.N.Y. 1997).

Additionally, both Defendants' and Plaintiffs' counsel maintain offices in New York but not in North Carolina, reducing costs for all parties if the litigation remains in this District. *See Geopharma*, 2005 WL 1123883, at *2 (where class counsel did not maintain an office in the transferee forum, "travel costs for class counsel would probably be greater if this action were

---

[10]     "Though 1,849 post-PSLRA securities fraud class actions settled between 1996 and 2019, only fourteen such actions were tried to a verdict between 1996 and 2019." Christine Hurt & Paul Stancil, Short Sellers, Short Squeezes, and Securities Fraud, 47 J. Corp. L. 105, 113 (2021).

transferred to the Middle District of Florida than they would be if all counsel operated out of their Southern District of New York offices," and finding that this factor "slightly favors maintaining the action" in the S.D.N.Y.); *SEC v. KPMG, LLP*, 2003 WL 1842871, at \*5 (S.D.N.Y. Apr. 9, 2003) ("There is no showing that it would be a financial burden on any defendant to litigate in New York as opposed to Hartford. To the contrary, counsel for the defendants are largely from New York City; none are from Connecticut."). Thus, transferring this action would, at most, only minimally add to the inconvenience of Defendants but would inconvenience Plaintiffs, and "the purpose of § 1404(a) is not to shift the convenience from one party to the other." *Yaroshinsky*, 2006 WL 8459557, at \*4.

This factor weighs against transfer.

### 4. Defendants Fail to Show that the Locus of Operative Facts Favors Transfer

Consideration of the locus of operative facts weighs against transfer or, at the very least, is neutral. Defendants argue that the locus of operative facts surrounds North Carolina, *see* Def. Br. at 10-12, but they overlook that significant events relevant to Plaintiffs' claims occurred in this District. Plaintiffs' case centers around Defendants' attempt to reach 20% utilization at the MVF facility. Tellingly, Defendants make no effort to describe the activities that actually took place at MVF during the Class Period. They argue that while MVF's profitability and production factored into Wolfspeed's projections and were topics of challenged statements, the Complaint is about the statements themselves, not any conduct occurring at MVF. *See id*. at 12-13. Defendants refuse to recognize that the reason why those statements were allegedly false and misleading was because of Defendants' inability to achieve the touted utilization at MVF. Thus, although Wolfspeed's alleged misstatements largely emanated from the Company's headquarters, the underlying conduct that rendered those statements materially false and misleading occurred in material part in this District.

- 14 -

At the very least, the locus of operative facts is split between this District and North Carolina. Courts frequently deny motions to transfer when the locus of operative facts is split between districts. *See SEC v. Milton*, 2022 WL 3156180, at \*9 (S.D.N.Y. Aug. 8, 2022) ("The locus of operative events does not weigh in favor of transfer. The place of alleged wrongdoing, principally Defendant's misrepresentations, is not limited to the district where he made those statements due to the nationwide public dissemination of information which forms the basis of this suit. Moreover, critical events took place in this District . . . Thus, I find that key events took place inside and outside of this District, rendering this factor neutral."); *Funke*, 2003 WL 194204, at \*3 (denying motion to transfer where locus of operative facts was split between California and New York); *Mastercard Int'l, Inc. v First Nat'l Bank of Omaha, Inc.*, 2002 WL 31521091, at \*2 (S.D.N.Y. Nov. 12, 2002) (motion to transfer denied where operative facts were present to some degree in both districts); *Yaroshinsky*, 2006 WL 8459557, at \*4 (same); *Geopharma*, 2005 WL 1123883, at \*2 ("Because the 'operative facts'—which involve the creation and dissemination of false or misleading statements— are spread across many districts, . . . this factor is neutral."); *Micromuse, Inc. v. Aprisma Mgmt. Techs., Inc.*, 2005 WL 1241924, at \*4 (S.D.N.Y. May 24, 2005) (finding this factor to be neutral on a motion to transfer where plaintiffs alleged that defendants had significant ties to a jurisdiction other than where it was headquartered).

The cases Defendants rely upon are inapt (*see* Def. Br. at 2, 10-12), as neither the plaintiffs' allegations nor the defendants themselves had more than a de minimis connection to the transferor forum. *See In re Energy Transfer Sec. Litig.*, 2022 WL 17477854, at \*4 (S.D.N.Y. Nov. 7, 2022) (defendant's limited "New York connections"—its general partner and subsidiary were registered to do business in New York, and its units traded on the NYSE—"are insufficient to shift the locus of operative facts"); *N. Brevard Cnty. Hosp. Dist. v. C.R. Bard, Inc.*, 648 F. Supp. 3d 401, 421

(N.D.N.Y. 2022) (court believed plaintiff was forum shopping, "seeking to ride on the coattails" of a related decision favorable to plaintiff); *Garity v. Tetraphase Pharms. Inc.*, 2019 WL 2314691, at *4 (S.D.N.Y. May 30, 2019) ("The complaint does not allege any additional facts that occurred in this district other than that certain Underwriter Defendants maintain offices in New York."); *Ahrens v. CTI Biopharma Corp.*, 2016 WL 2932170, at *2 (S.D.N.Y. May 19, 2016) (granting motion to transfer where plaintiffs did not oppose the motion and without any discussion of connections to New York); *In re Glob. Cash Access Holdings, Inc. Sec. Litig.*, 2008 WL 4344531, at *6 (S.D.N.Y. Sept. 18, 2008) (only connection with transferor forum was that certain aspects of the IPO and secondary offering occurred there); *In re AtheroGenics Sec. Litig.*, 2006 WL 851708, at *4 (S.D.N.Y. Mar. 31, 2006) ("Aside from the sale and purchase of Atherogenics stock" by class members, "the dissemination of the press releases, and two study-related New York appearances" by CEO, "there are no facts tying this action here[.]"); *Bucks Cnty. Emps. Ret. Sys. v. Norfolk S. Corp.*, 2023 WL 5992266, at *3-*4 (S.D. Ohio Sept. 15, 2023) (train derailment, which plaintiffs argued was at the center of the case, did not even occur in the transferor forum; and although defendant's lobbying practices—a key aspect of plaintiffs' argument opposing transfer—took place in transferor forum, defendant "invest[ed] more resources lobbying in other states"); *City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*, 2015 WL 12659925, at *4 (S.D.N.Y. Apr. 30, 2015) (plaintiff's counsel conceded that the action had "no per se connection" to the S.D.N.Y.); *Erickson v. Corinthian Colls., Inc.*, 2013 WL 5493162, at *2-*3 (S.D.N.Y. Oct. 1, 2013) ("There are minimal connections with the [S.D.N.Y.] in this case"; plaintiff's "choice of the [S.D.N.Y.] appears to be tactical" because a judge in the transferee forum previously dismissed a securities action based on similar allegations); *SBAV LP v. Porter Bancorp, Inc.*, 2013 WL 3467030, at *7 (S.D.N.Y. July 10, 2013) ("the events most material to this case are lopsidedly ones that occurred in or relate to Kentucky"); *In re Hanger*

- 16 -

*Orthopedic Grp., Inc. Sec. Litig*., 418 F. Supp. 2d 164, 168, 171 (E.D.N.Y. 2006) (alleged fraud was nationwide in scope; "New York bears no more connection to the case than the other states where billing fraud allegedly occurred"); *In re Nematron Corp. Sec. Litig*., 30 F. Supp. 2d 397, 405 (S.D.N.Y. 1998) ("the facts giving rise to the case have little material connection to New York").[11]

Defendants also rely on *City of Warren Police & Fire Retirement System v. Zebra Technologies Corp*., 2019 WL 3997354 (E.D.N.Y. Aug. 23, 2019) ("*Zebra*"), but that case does not help them. *See* Def. Br. at 13. In *Zebra*, unlike here, the alleged misstatements did not focus on activity in the transferor forum per se. *See* 2019 WL 3997354, at \*2. The plaintiffs in *Zebra* alleged that the defendants "failed to disclose that any 'cost synergies' or 'cost savings,' realized from the acquisition in the short run would largely be offset by hundreds of millions of dollars in incremental spending necessary to complete the acquisition and to remedy severe and undisclosed problems encountered during the migration from Motorola-supported IT systems to those of Zebra's." *Id*. Evidence concerning those allegations would not necessarily be found in the transferor forum. Here, on the other hand, activity that physically took place at MVF is critical to the litigation.

"[D]efendants' position, if taken to its logical conclusion, would create a presumption that securities class actions should be brought in the home district of the defendant. This position is at odds with the actual text of section 27, which provides that such suits may be brought *either* 'in the district wherein any act or transaction constituting the violation occurred' *or* 'in the district wherein the defendant is found or is an inhabitant or transacts business.'" *Geopharma*, 2005 WL 1123883, at \*2 (emphasis in original). Even if the Middle District of North Carolina was the locus of operative

---

[11]    Defendants cite the oft-quoted statement that misrepresentations and omissions are deemed to occur in the "district where they are transmitted or withheld, not where they are received." Def. Br. at 10 (citing cases). But Plaintiffs do not assert that the misrepresentations and omissions at issue occurred in the district where they were received. Rather, Plaintiffs contend that the subject of those misrepresentations and omissions (MVF), and the operational data underlying them, are located in this District, thereby justifying litigating this case here.

facts, that factor is not outcome-determinative because it is outweighed by all the others discussed herein, which collectively militate against transfer. *See, e.g.*, *Manchin*, 2025 WL 1276569, at *15 (denying motion to transfer where locus of operative facts favored transfer, but other factors weighed against transfer); *Mazuma*, 1 F. Supp. 3d at 31, 33 (same); *Cohn v. Metro. Life Ins., Co.*, 2007 WL 1573874, at *3, *5 (S.D.N.Y. May 31, 2007) (same). Accordingly, this factor does not favor transfer and is neutral at best.

### 5. The Location of Relevant Documents and Ease of Access to Sources of Proof Do Not Favor Transfer

Defendants also argue that "most potentially relevant documents" are in North Carolina, and the location of documents "weighs heavily in favor of transfer." Def. Br. at 12. First, it is far from clear that most potentially relevant documents are in fact in North Carolina, given that MVF is based in this District and it was MVF's operation and performance that formed the basis for the alleged misstatements. Second, courts in this Circuit do "not view this factor as particularly significant given the technological age in which we live, with the widespread use of, among other things, electronic document production." *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 352 (E.D.N.Y. 2012) (citing cases); *see also Manchin*, 2025 WL 1276569, at *13 ("As a general rule, courts have consistently held that the location of relevant documents is not a major consideration in an era of electronic records and eDiscovery."); *Guardian Life Ins. Co. of Am. v. Hernandez*, 2011 WL 3678134, at *3 (S.D.N.Y. Aug. 22, 2011) ("Because modern technology has made the transportation of documents relatively easy, Defendants must make a convincing showing they will suffer any real hardship in moving documents to this District. . . . [T]he transportation of documents in the era of the flashdrive, the CD, and the Internet is no longer a hardship for anyone.").

Third, Defendants have failed to specify the nature and volume of the documents to be produced that would make document production easier in North Carolina, nor have they identified

any problems with sharing or transporting these documents. *See Colour & Design v. U.S. Vinyl Mfg. Corp.*, 2005 WL 1337864, at *4 (S.D.N.Y. June 3, 2005) ("[G]iven defendants' failure to specify the nature and volume of the documents they plan to use in support of their case, or the difficulty in transporting such documents, this factor weights against transfer."). This factor does not favor transfer.

### 6. Availability to Compel Unwilling Witnesses Does Not Favor Transfer

Defendants do not argue that the availability of process to compel the attendance of unwilling witnesses favors transfer, nor have they identified any witness who will be unwilling to attend the trial of this action absent the compulsion of a subpoena. Further, a company has the ability to compel the testimony of its employees; many of the witnesses called will likely be Wolfspeed employees, obviating any issues surrounding the court's subpoena power for these witnesses. *See Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000) (denying motion to transfer in part because defendant could compel the testimony of its own employees without a subpoena). In any case, any of the knowledgeable third-party witnesses who are unwilling to appear can be adequately questioned through deposition testimony. Therefore, no prejudice would be inflicted upon either party by maintaining an already proper venue in the Northern District of New York, and this factor does not favor transfer.

### 7. The Relative Means of the Parties Do Not Favor Transfer

Defendants do not argue that the relative means of the parties favor transfer. "Where a disparity exists between the means of the parties . . . the court may consider the relative means of the parties in determining where a case should proceed." *Ye Olde Time Keepers, Inc. v. C.R. Martin Auctioneers, Inc.*, 2018 WL 1832930, at *13 (E.D.N.Y. Apr. 17, 2018). Defendants must establish that litigating this case in the Northern District of New York would impose an unduly burdensome

- 19 -

financial hardship. *See Diamond Collection, LLC v. Underwraps Costume Corp.*, 2017 WL 3130323, at \*5 (E.D.N.Y. July 21, 2017). Defendants have made no such showing nor raised any such argument. Therefore, this factor is either neutral or weighs against transfer.

### 8. The Relative Familiarity of the Fora with the Governing Law Does Not Favor Transfer

Defendants have made no showing that the Middle District of North Carolina's familiarity with the governing law favors transfer. Rather, their brief is silent on this point. The reason, of course, is apparent: this Court possesses the expertise and ability to move forward with this case promptly and efficiently. This factor weighs against transfer.

### 9. Trial Efficiency and the Interests of Justice Do Not Favor Transfer

Defendants fail to show by clear and convincing evidence that judicial economy and the interests of justice tip the scale in favor of transfer. They argue that a copy-cat derivative action[12] filed in the Middle District of North Carolina five months after the instant action favors transfer. *See* Def. Br. at 13-14. Not so.

First and foremost, the derivative claims are now property of the bankruptcy estate and any pending derivative case is automatically stayed by Wolfspeed's bankruptcy filing. *See In re Ambac Fin. Grp., Inc.*, 487 F. App'x 663, 664 (2d Cir. 2012). The plaintiff who filed the derivative action has essentially lost control of the case. The *Lamon* defendants will presumably move to dismiss on this basis.

Second, the *Lamon* action and this action have no overlapping claims and they likely would not be consolidated, precluding trial efficiency. *See Milton*, 2022 WL 3156180, at \*9 (judicial

---

[12] *See Lamon v. Werner et al.*, Case No. 1:25-cv-00298 (M.D.N.C.) (filed on April 21, 2025). The *Lamon* complaint copied the *Zagami* complaint's alleged false and misleading statements almost verbatim. *Compare Lamon* Complaint (ECF No. 1) ¶¶28-51 *with Zagami* Complaint (ECF No. 1) ¶¶21-43.

- 20 -

efficiency does not weigh in favor of transfer "because this action would not be consolidated with those pending") (citing *KPMG*, 2003 WL 1842871, at *2, *5 (denying transfer to district where shareholder cases were pending because those cases could not be consolidated with SEC action)); *Mazuma*, 1 F. Supp. 3d at 33 (because "the two cases cannot be consolidated, the Court concludes that any benefit gained by transferring this action would be minimal"). And since the two actions do not allege overlapping claims, there is no "risk of inconsistent rulings."[13] Def. Br. at 14.

Third, Defendants' contention that a second-filed case should dictate the transfer of the first-filed case turns on its head "the general rule that two competing but related disputes brought in different fora should be consolidated in the court in which the ***first action*** was brought." *Cuyahoga Equip.*, 980 F.2d at 116. For this reason, *Global Cash*, relied on by Defendants (*see* Def. Br. at 14), is inapposite. In that case, an action pending in the transferee forum ***predated*** the action pending in the transferor forum. *See* 2008 WL 4344531, at *8.

Accordingly, this factor does not support transfer.

## IV.    CONCLUSION

For the reasons set forth above, Defendants have not met their heavy burden and their motion should be denied in its entirety.

DATED:  July 7, 2025                                ROBBINS GELLER RUDMAN
                                                            & DOWD LLP
                                                    SAMUEL H. RUDMAN
                                                    ALAN I. ELLMAN (admitted *pro hac vice*)


                                                    */s/ Alan I. Ellman*
                                                    ALAN I. ELLMAN

---

[13]    The *Lamon* action is in its infancy—a judge has not even been assigned to it—and transfer of this action to North Carolina would only cause significant delay. *See Mazuma*, 1 F. Supp. 3d at 33 ("although th[is] case is still in its early stages, a transfer would if anything delay resolution of this dispute as a new court familiarized itself with the facts of the case").

- 21 -

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
aellman@rgrdlaw.com

POMERANTZ LLP
JEREMY A. LIEBERMAN
MICHAEL J. WERNKE
600 Third Avenue, 20th Floor
New York, NY  10016
Telephone:  212/661-1100
212/661-8665 (fax)
jalieberman@pomlaw.com
mjwernke@pomlaw.com

*Lead Counsel for Lead Plaintiffs*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
PERETZ BRONSTEIN (*pro hac vice* application
forthcoming)
60 East 42nd Street, Suite 4600
New York, NY  10165
Telephone: 212/697-6484
212/697-7296 (fax)
peretz@bgandg.com

*Attorneys for Plaintiff William Maizner*

- 22 -