## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

<table>
<tr><td>

GARY ZAGAMI, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

WOLFSPEED, INC., GREGG A. LOWE, AND NEILL P. REYNOLDS,

Defendants.

</td><td>

Case No. 6:24-cv-01395-ECC-MJK

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE**

ORAL ARGUMENT REQUESTED

</td></tr>
</table>

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 3

I. PLAINTIFFS' CHOICE OF FORUM IS ENTITLED TO MINIMAL DEFERENCE ..... 3

II. THE CONVENIENCE OF THE PARTIES AND WITNESSES FAVORS TRANSFER 5

    A. The Middle District of North Carolina Would Be More Convenient For The Defendants Without Increasing Inconvenience For Plaintiffs. ......................... 5

    B. The Middle District of North Carolina Would Be More Convenient For Witnesses Who Possess Information Relevant to The Claims and Defenses. ........ 6

III. THE LOCUS OF OPERATIVE FACTS AND RELEVANT EVIDENCE FAVORS TRANSFER ................................................................................................................. 8

CONCLUSION .............................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Accantia Group Holdings v. Food Market Merchandising, Inc.*,
908 F. Supp. 2d 439 (S.D.N.Y. 2012)........................................................................3

*Ahrens v. CTI Biopharma Corp.*,
2016 WL 2932170 (S.D.N.Y. May 19, 2016) ...........................................................8

*Bucks County Employees Retirement System v. Norfolk Southern Corp.*,
2023 WL 5992266 (S.D. Ohio Sept. 15, 2023) ....................................................8, 10

*City of Pontiac General Employees Retirement System v. Dell Inc.*,
2015 WL 12659925 (S.D.N.Y. Apr. 30, 2015)...........................................................8

*City of Warren Police & Fire Retirement System v. Zebra Technologies Corp.*,
2019 WL 3997354 (E.D.N.Y. Aug. 23, 2019).................................................3, 8, 9, 10

*Dickerson v. Novartis Corp.*,
315 F.R.D. 18 (S.D.N.Y. 2016) .................................................................................6

*DiRienzo v. Philips Services Corp.*,
294 F.3d 21 (2d Cir. 2002).........................................................................................4

*Doshi v. General Cable Corp.*,
2014 WL 12774226 (S.D.N.Y. Feb. 5, 2014)..........................................................5, 7

*Funke v. Life Financial Corp.*,
2003 WL 194204 (S.D.N.Y. Jan. 28, 2003) .............................................................5, 9

*Garity v. Tetraphase Pharmaceuticals Inc.*,
2019 WL 2314691 (S.D.N.Y. May 30, 2019) ..........................................................7, 8

*In re AtheroGenics Securities Litigation*,
2006 WL 851708 (S.D.N.Y. Mar. 31, 2006) ............................................................8

*In re Energy Transfer Securities Litigation*,
2022 WL 17477854 (S.D.N.Y. Nov. 7, 2022)......................................................3, 5, 8

*In re Geopharma, Inc. Securities Litigation*,
2005 WL 1123883 (S.D.N.Y. May 11, 2005) ..........................................................8, 9

*In re Glenayre Technologies, Inc. Securities Litigation*,
982 F. Supp. 294 (S.D.N.Y. 1997) ...........................................................................9

*In re Global Cash Access Holdings, Inc. Securities Litigation*,
2008 WL 4344531 (S.D.N.Y. Sept. 18, 2008)...........................................................8

ii

*In re Hanger Orthopedic Group, Inc. Securities Litigation*,
    418 F. Supp. 2d 164 (E.D.N.Y. 2006) ...............................................................8

*In re Nematron Corp. Securities Litigation*,
    30 F. Supp. 2d 397 (S.D.N.Y. 1998)...................................................................5

*In re Stillwater Mining Co. Securities Litigation*,
    2003 WL 21087953 (S.D.N.Y. May 12, 2003) ....................................................3

*Iragorri v. United Technologies Corp.*,
    274 F.3d 65 (2d Cir. 2001).................................................................................4

*Manchin v. PACS Group, Inc.*,
    2025 WL 1276569 (S.D.N.Y. May 2, 2025) .....................................................5, 8

*Mastercard International, Inc. v. First National Bank of Omaha, Inc.*,
    2002 WL 31521091 (S.D.N.Y. Nov. 12, 2002)...................................................9

*Mazuma Holding Corp. v. Bethke*,
    1 F. Supp. 3d 6 (E.D.N.Y. 2014) ......................................................................7

*Micromuse, Inc. v. Aprisma Management Technologies, Inc.*,
    2005 WL 1241924 (S.D.N.Y. May 24, 2005) ....................................................9

*North Brevard County Hospital District v. C.R. Bard, Inc.*,
    648 F. Supp. 3d. 401 (N.D.N.Y. 2022)......................................................3, 5, 8

*Orb Factory, Ltd. v. Design Science Toys, Ltd.*,
    6 F. Supp. 2d 203 (S.D.N.Y. 1998) ..................................................................3

*Oxford v. Uddin*,
    2023 WL 9111156 (N.D.N.Y. May 5, 2023)......................................................3

*Passmore v. Vertex Energy, Inc.*,
    2024 WL 266531 (S.D. Tex. Jan. 24, 2024)...................................................8, 10

*Pence v. Gee Group, Inc.*,
    236 F. Supp. 3d 843 (S.D.N.Y. 2017).................................................................7

*Ruiz ex rel. E.R. v. United States*,
    2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014) ...................................................5

*SEC v. Milton*,
    2022 WL 3156180 (S.D.N.Y. Aug. 8, 2022)......................................................9

*SEC v. Yaroshinsky*,
    2006 WL 8459557 (S.D.N.Y. Oct. 5, 2006).......................................................9

*Steck v. Santander Consumer USA Holdings, Inc.*,
    2015 WL 3767445 (S.D.N.Y. June 17, 2015) ........................................................8

**DOCKETED CASES**

*In re Wolfspeed, Inc.*, No. 25-90163 (Bank. S.D. Tex.) ...................................................1

*Lamon v. Werner*, No. 1:25-cv-00298 (M.D.N.C.)...........................................................5

**STATUTES, RULES, AND REGULATIONS**

28 U.S.C. § 1404....................................................................................2, 4, 5, 6, 8, 10

28 U.S.C. § 1408.............................................................................................................1

11 U.S.C. §§ 101 *et seq.*................................................................................................1

11 U.S.C. § 362..............................................................................................................1

**OTHER AUTHORITIES**

Procedures for Complex Cases in the Southern District of Texas (Sept. 18, 2024),
    https://www.txs.uscourts.gov/sites/txs/files/Complex_11_Procedures_9_1
    8_24_FINAL.pdf ......................................................................................................1

Table F-2, U.S. Bankruptcy Courts - Bus. & Nonbus. Cases Commenced,
    https://www.uscourts.gov/sites/default/files/document/bf_f2_0331.2025.p
    df .............................................................................................................................1

<u>**INTRODUCTION**</u>

Defendants Gregg A. Lowe and Neill P. Reynolds (together, "Individual Defendants," and together with Wolfspeed, Inc. ("Wolfspeed" or the "Company"), "Defendants")[1] respectfully submit this Reply in further support of Defendants' Motion to Transfer Venue (ECF No. 59) (the "Motion" or "Mot.") and in response to the Opposition filed by Qiu Shaomei, He Jie, Cai Guangjian, and Dr. Syed M. Alam ("Lead Plaintiffs") and William Maizner (together with Lead Plaintiffs and the putative class, "Plaintiffs") (ECF No. 61) (the "Opposition" or "Opp.").[2]

This Action concerns statements that a North Carolina-based company made to its shareholders regarding its financial projections and related disclosures. Plaintiffs do not dispute

---

[1]     As an initial matter, on June 30, 2025, Wolfspeed and Wolfspeed Texas, LLC each commenced a case (collectively, the "Chapter 11 Cases") under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") by filing voluntary petitions in the United States Bankruptcy Court for the Southern District of Texas, Houston Division ("Southern District of Texas Bankruptcy Court"). *See* Defendants' Suggestion of Bankruptcy (ECF No. 63). The automatic stay imposed by Bankruptcy Code Section 362 immediately went into effect in this Action upon the commencement of the Chapter 11 Cases. *Id.* Plaintiffs contend that the automatic stay does not apply to the Individual Defendants and only applies to Wolfspeed. *See* Plaintiffs' Response to Defendants' Suggestion of Bankruptcy (ECF No. 64). Regardless, the Company expects to emerge from Chapter 11 proceedings by September 30, 2025. *See* Debtors' Demonstrative at 25, *In re Wolfspeed, Inc.*, No. 25-90163 (Bank. S.D. Tex. July 1, 2025), ECF No. 57. Accordingly, Defendants respectfully request that the Court defer ruling on this Motion until after the Company has emerged from Chapter 11 proceedings. Deferring a ruling on the instant Motion will ensure a consistent procedural outcome across Defendants and promote judicial efficiency by avoiding litigation of the same issue twice. Plaintiffs will not be prejudiced in any way because of the short timeline on which the Chapter 11 Cases are expected to occur.

Wolfspeed's Chapter 11 Case is pending in the Southern District of Texas Bankruptcy Court given its ties to that jurisdiction, including that its debtor affiliate, Wolfspeed Texas, LLC, is organized in Texas. A company may, as of right, file a chapter 11 case in a district where it is organized, under 28 U.S.C. § 1408(1). Further, a company may, as of right, file a chapter 11 case in a district where an affiliate has its chapter 11 case pending, under 28 U.S.C. § 1408(2), which is what Wolfspeed subsequently did. The Southern District of Texas Bankruptcy Court is one of the most experienced bankruptcy courts in the country, having presided over 700 chapter 11 cases during the twelve months ending March 31, 2025, as compared to fewer than 10 for the United States Bankruptcy Court for the Middle District of North Carolina. *See* Table F-2, U.S. Bankruptcy Courts – Bus. & Nonbus. Cases Commenced, https://www.uscourts.gov/sites/default/files/document/bf_f2_0331.2025.pdf. The Southern District of Texas Bankruptcy Court has specific experience with and procedures for larger, "complex" chapter 11 cases (defined as those addressing over $200 million in liabilities; Wolfspeed estimates its liabilities in the range of $1 billion to $10 billion), *see* Procedures for Complex Cases in the Southern District of Texas (Sept. 18, 2024), https://www.txs.uscourts.gov/sites/txs/files/Complex_11_Procedures_9_18_24_FINAL.pdf, making it a common filing district for companies that qualify for those procedures. Wolfspeed's Chapter 11 Case is pending in the appropriate venue for these bankruptcy reasons, just as the Middle District of North Carolina is, for different reasons, the appropriate venue for this Action.

[2]     Unless otherwise noted, capitalized terms have the meanings set forth in the Memorandum of Law in Support of Defendants' Motion (ECF No. 59-1).

that courts routinely transfer securities fraud class actions to the issuer's home district where, as here, the challenged statements were prepared and issued from company headquarters – even where there are underlying allegations that bear some connection to the forum. *See infra* at 9-10.

Instead, Plaintiffs largely attack strawmen. Defendants did not "grossly downplay" the connections that exist between this Action and the forum. Rather, they acknowledged those connections but showed that the relevant Section 1404(a) analysis supports transfer. Defendants also never claimed they could *only* litigate conveniently in the Middle District of North Carolina, so Plaintiffs' reference to Wolfspeed's bankruptcy filing in Texas is hardly a "gotcha" point, but instead irrelevant. Similarly, Defendants never claimed that there is a blanket rule requiring all securities fraud cases to be transferred to the issuer's home district. Rather, Defendants pointed out, quite correctly, that courts overwhelmingly do so and that the same underlying rationale fully applies here.

Nothing in Plaintiffs' Opposition supports deviating from this practice. <u>First</u>, Plaintiffs' choice of forum is entitled to minimal deference because Plaintiffs purport to represent a nationwide class and because no named Plaintiff resides in this District. <u>Second</u>, the convenience of the parties and witnesses favors transfer. The Company is headquartered in the Middle District of North Carolina; the Individual Defendants – the former CEO and CFO – are based in and/or work primarily from North Carolina; and other key witnesses to the preparation and dissemination of the Company's financial projections reside in North Carolina. Indeed, Plaintiffs' own confidential witnesses – former employees at the Company's headquarters in North Carolina – attest to how information from the facility in Marcy, New York was "rolled up" at headquarters into Company-wide projections. <u>Finally</u>, for the same reason, the locus of operative facts and location of relevant evidence support transfer.

2

**ARGUMENT**[3]

## I.    PLAINTIFFS' CHOICE OF FORUM IS ENTITLED TO MINIMAL DEFERENCE

Plaintiffs incorrectly argue that their forum selection is entitled to "considerable" weight. Opp. at 5. However, Plaintiffs all but ignore the countervailing factors present in this case that significantly diminish any weight afforded to their choice.

Courts regularly hold that little or no deference applies in a nationwide securities class action like this one. *See* Am. Compl. ¶ 2; Mot. at 7; *see also*, *e.g.*, *In re Energy Transfer Sec. Litig.*, 2022 WL 17477854, at *2 (S.D.N.Y. Nov. 7, 2022) (finding that weight afforded to plaintiff's choice of forum is reduced when plaintiff represents geographically dispersed class); *N. Brevard Cnty. Hosp. Dist. v. C.R. Bard, Inc.*, 648 F. Supp. 3d. 401, 420 (N.D.N.Y. 2022) (similar); *City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 2019 WL 3997354, at *4 (E.D.N.Y. Aug. 23, 2019) (similar); *In re Stillwater Mining Co. Sec. Litig.*, 2003 WL 21087953, at *5 (S.D.N.Y. May 12, 2003) (collecting cases). Tellingly, the two cases on which Plaintiffs rely to argue that their choice demands "considerable" weight are not class actions, *see Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 210 (S.D.N.Y. 1998); *Accantia Grp. Holdings v. Food Mkt. Merch., Inc.*, 908 F. Supp. 2d 439, 441 (S.D.N.Y. 2012).

Courts also routinely "afford less weight to a plaintiff's choice of forum where the plaintiff does not reside in that forum and there is no meaningful connection to the claims." *Oxford v. Uddin*, 2023 WL 9111156, at *2 (N.D.N.Y. May 5, 2023). This is precisely the case here. The Opposition conveniently fails to acknowledge that the four Lead Plaintiffs are residents of China and Georgia, and that Mr. Maizner (a "plaintiff" but not a Lead Plaintiff) does not reside in this District. *See* Mot. at 8 n. 3.

---

[3]    Plaintiffs do not dispute that the Action could have been brought in the Middle District of North Carolina.

Though there is some connection between the claims and the forum, Opp. at 6-7, it is not enough to merit deference given these other considerations. This case fundamentally concerns not the Company's Mohawk Valley silicon carbide fabrication facility (the "MVF"), but rather statements about the Company's financial projections prepared in and emanating from headquarters in the Middle District of North Carolina. To the extent those statements related to the MVF, Plaintiffs' own confidential witnesses allege that people at the Company's headquarters "rolled up" information about the MVF into profit and loss ("P&L") statements, "financial reviews," and other consolidated reports that formed the basis for the challenged statements. *See*, *e.g.*, Am. Compl. ¶ 10 (FE1 "worked out of Wolfspeed's corporate headquarters . . . and reviewed the Company's P&L statements and conducted financial reviews – which included information on MVF's utilization."), ¶ 53 ("FE1 had access to information about MVF's utilization because FE1 was responsible for reporting the 'actual results' of MVF in the form of a monthly 'financial review' or 'P&L' review."), ¶ 55 ("FE2's role involved 'analyzing the profitability' of MVF . . . which then 'rolled up into a final profit and loss statement'. . . ."), and ¶ 89 ("[A]t the end of each quarter, FE1 and other Finance employees would roll up the Company's results and review them . . . ."). And for the same reasons and as discussed herein, that Mr. Lowe, the former CEO, occasionally traveled to the MVF is immaterial. *See infra* at 6.

Beyond this, the cases that Plaintiffs cite do not support their position. Two of the four involve foreign corporations moving to dismiss on *forum non conveniens* grounds – an analysis that entails different considerations than a Section 1404(a) motion to transfer. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 75 (2d Cir. 2001); *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 33-34 (2d Cir. 2002). In the other two cases, the prevailing connections to the forum were a partially denied motion to dismiss and a pending related derivative litigation, respectively, and the

courts denied transfer primarily in the name of judicial efficiency. *Funke v. Life Fin. Corp.*, 2003 WL 194204, at *4 (S.D.N.Y. Jan. 28, 2003); *Manchin v. PACS Grp., Inc.*, 2025 WL 1276569, at *14 (S.D.N.Y. May 2, 2025).[4]

Finally, Plaintiffs rely on connections to *other* districts. Mr. Maizner (who has no role in the case anyhow) resides in the Eastern District of New York, the Company's stock trades on the New York Stock Exchange in the Southern District of New York (like many other public companies), and the securities analysts and commentators covering the Company are apparently there as well. Opp. at 7; *see In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 403 (S.D.N.Y. 1998) (finding residence of plaintiffs has "diminished relevance" in securities class action transfer analysis); *Doshi v. Gen. Cable Corp.*, 2014 WL 12774226, at *2 (S.D.N.Y. Feb. 5, 2014) (granting transfer and finding that defendant's stock trading on exchange within district did not alter transfer analysis); *In re Energy Transfer Sec. Litig.*, 2022 WL 17477854, at *3 (finding that "courts consistently grant little weight to the location of" securities analysts). For the foregoing reasons, Plaintiffs' choice of forum should be afforded minimal deference.

## II. THE CONVENIENCE OF THE PARTIES AND WITNESSES FAVORS TRANSFER

### A. The Middle District of North Carolina Would Be More Convenient For The Defendants Without Increasing Inconvenience For Plaintiffs.

The "core determination" in a Section 1404(a) transfer analysis is the location of the "center of gravity of the litigation." *N. Brevard Cnty. Hosp. Dist.*, 648 F. Supp. at 422 (citation omitted). As a result, and as Plaintiffs concede, the convenience of the parties (and witnesses) is the "single most important factor in the analysis of whether transfer should be granted." *Ruiz ex rel. E.R. v. United States*, 2014 WL 4662241, at *11 (E.D.N.Y. Sept. 18, 2014); *see also* Opp. at 9-10.

---

[4] Here, unlike in *Manchin*, the related derivative action was filed in the transferee forum, the Middle District of North Carolina. *See Lamon v. Werner*, No. 1:25-cv-00298 (M.D.N.C.).

Plaintiffs do not seriously dispute that the Middle District of North Carolina is more convenient for the Defendants due to the location of Wolfspeed's headquarters and Messrs. Lowe and Reynolds. *See* Mot. at 9. That Wolfspeed recently filed for bankruptcy in Texas, and that Mr. Lowe occasionally travelled to New York for business when he was employed by the Company, are strawmen. Opp. at 11-13. Defendants never said the Middle District of North Carolina was the *only* forum in which they could conveniently litigate, only that – as a Section 1404(a) analysis contemplates – it is more convenient. *See* Mot. at 8-10; *see also supra* at 1. Glaringly absent from the Opposition is any claim that litigating in North Carolina would inconvenience Plaintiffs, who have no apparent connection with this District and seek to represent a nationwide class. The Northern District of New York is no more convenient for Plaintiffs than the Middle District of North Carolina. *See* Mot. at 9. Where, as here, "transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant," the balance weighs in favor of transfer. *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 29 (S.D.N.Y. 2016).

> **B.** **The Middle District of North Carolina Would Be More Convenient For Witnesses Who Possess Information Relevant to The Claims and Defenses.**

Plaintiffs argue that the case should remain in the Northern District of New York because it is more convenient for four individuals (introduced for the first time in Plaintiffs' Opposition) who purportedly worked at the MVF and are the "most important witnesses." Opp. at 9. This argument proceeds from the false premise that this Action is principally about conduct that "occurred" at the MVF. As already explained, that mischaracterizes the case, which fundamentally is about corporate financial projections developed at and issued from the Company's headquarters in North Carolina. *See* Mot. at 9-10; *supra* at 3-4, *infra* at 7. Beyond that, Plaintiffs admit that their ability to identify witnesses has been "constrained" without discovery, so their characterization of these individuals as the "most important" witnesses is speculation. Opp. at 9-

6

11. Notably, based on their LinkedIn profiles that Plaintiffs attach as exhibits to the Opposition, none of the four individuals appears to have had any involvement with the preparation or dissemination of the challenged statements or Wolfspeed's financial projections generally. *See* Ellman Decl. Exs. 1-4 (ECF No. 62). Even assuming these individuals possess some relevant knowledge, they clearly are not the "most important" witnesses in the case – that would be the various individuals at the Company's headquarters involved in preparing and disseminating the financial projections. *See* Mot. at 11; Speirits Decl. (ECF No. 59-2) ¶¶ 12, 17; *see also Garity v. Tetraphase Pharms. Inc.*, 2019 WL 2314691, at *3 (S.D.N.Y. May 30, 2019) ("In a securities class action, courts presume the 'key witnesses' are 'officers and employees of [the corporate issuer] who participated in drafting or distributing [the challenged] statements.'" (citation omitted)); *Doshi*, 2014 WL 12774226 at *3 (noting employees who made allegedly false statements are "key witnesses" and finding location of "most of the key witnesses" in transferor forum supported transfer).[5] Indeed, the Opposition brushes past the fact that Plaintiffs' own confidential witnesses in the Amended Complaint (FE1 and FE2) both apparently worked at the Company's headquarters. *See* Am. Compl. ¶¶ 52, 55-56; Mot. at 4; Speirits Decl. ¶¶ 16-17.[6]

---

[5] Plaintiffs claim that the Amended Complaint "does not make any allegations about Wolfspeed's internal controls," rendering any of Defendants' proposed witnesses related to internal controls irrelevant. Opp. at 11. But it plainly relies on allegations by FE1 concerning Wolfspeed's internal controls. *See*, *e.g.*, Am. Compl. Section "Wolfspeed Manipulated Its Quarterly Results" ¶ 89 ("'One of the controllers made the joke – "It's time to dive for dollars"' FE1 said . . . .") and ¶ 96 ("Basic accounting principles stipulate that expenses and revenues need to align for any given period."). Plaintiffs also take issue with Defendants' "generic[]" description of their proposed witnesses' testimony and purported failure to "indicate whether such testimony would be material." Opp. at 10. But as Plaintiffs' own authority notes, Defendants need only make a "general statement of the substance of [the witnesses'] testimony." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 30 (E.D.N.Y. 2014); *see also Pence v. Gee Group, Inc.*, 236 F. Supp. 3d 843, 856-57 (S.D.N.Y. 2017). As Plaintiffs acknowledge, Defendants did just that by specifying that their witnesses "most likely will have knowledge concerning Wolfspeed's SEC filings, financial projections, and earnings calls." Speirits Decl. at 4. Besides, it is self-evident from the witnesses' job titles that they would have crucial knowledge of the Company's financial projections. *Id.* at 5-6.

[6] As previously discussed, Plaintiffs allege in the Amended Complaint that FE1 worked at Wolfspeed's headquarters in the Middle District of North Carolina. Although Plaintiffs do not state where FE2 worked, they allege that FE2 reported to Hunter Lane, Senior Finance Director, Power, who is based in Durham, North Carolina. *See* Mot. at 4; Speirits Decl. ¶¶ 16-17. Plaintiffs appear to concede in the Opposition that FE2 was based at Wolfspeed's headquarters. *See* Opp. at 9 n.6.

### III. THE LOCUS OF OPERATIVE FACTS AND RELEVANT EVIDENCE FAVORS TRANSFER

"Defendants' alleged misrepresentations and omissions are the gravamen of [the] case," *City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*, 2015 WL 12659925, at *6 (S.D.N.Y. Apr. 30, 2015), and they occurred in the "district where they are transmitted or withheld, not where they are received," *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006); Mot. at 10-12. Thus, the Middle District of North Carolina is clearly the "center of gravity" of the case, not to mention the location of most of the relevant evidence.[7] Plaintiffs cannot dispute that on that basis, a myriad of courts in this Circuit and across the country have transferred securities class actions to the issuer's home district. *See, e.g., In re Energy Transfer Sec. Litig.*, 2022 WL 17477854, at *4; *N. Brevard Cnty. Hosp. Dist.*, 648 F. Supp. 3d at 427; *Garity*, 2019 WL 2314691, at *4; *Zebra*, 2019 WL 3997354 at *4; *Ahrens v. CTI Biopharma Corp.*, 2016 WL 2932170, at *3 (S.D.N.Y. May 19, 2016); *In re Glob. Cash Access Holdings, Inc. Sec. Litig.*, 2008 WL 4344531, at *8 (S.D.N.Y. Sept. 18, 2008); *In re AtheroGenics Sec. Litig.*, 2006 WL 851708, at *3 (S.D.N.Y. Mar. 31, 2006); *see also Passmore v. Vertex Energy, Inc.*, 2024 WL 266531, at *6 (S.D. Tex. Jan. 24, 2024); *Bucks Cnty. Emps. Ret. Sys. v. Norfolk S. Corp.*, 2023 WL 5992266, at *7 (S.D. Ohio Sept. 15, 2023).

Plaintiffs cite only four private securities fraud class actions in which Section 1404(a) motions to transfer were denied. None bears any resemblance to this case. *See Manchin*, 2025 WL 1276569, at *2 (denying transfer because of pending related derivative litigation in forum and lead plaintiff's and underwriter defendants' substantial ties to forum); *In re Geopharma, Inc. Sec.*

---

[7] Notwithstanding Plaintiffs' attempt to argue otherwise, as demonstrated, the location of relevant documents is overwhelmingly North Carolina, *see* Mot. at 12, and this factor supports transfer. *See Steck v. Santander Consumer USA Holdings, Inc.*, 2015 WL 3767445, at *7-8 (S.D.N.Y. June 17, 2015) (finding assertion supported by declaration that majority of relevant documents are in transferee forum sufficient to favor transfer).

8

*Litig.*, 2005 WL 1123883, at *2-3 (S.D.N.Y. May 11, 2005) (denying transfer where challenged statements were made in several districts); *Funke*, 2003 WL 194204, at *4 (denying transfer primarily because forum decided previous motion to dismiss in same case); *In re Glenayre Techs., Inc. Sec. Litig.*, 982 F. Supp. 294, 298 (S.D.N.Y. 1997) (denying transfer with minimal discussion and granting motion to dismiss).

Moreover, contrary to Plaintiffs' claims and their authorities, the locus of operative facts is not at least "split" between this District and the Middle District of North Carolina such that this factor is neutral. Opp. at 15; *see SEC v. Milton*, 2022 WL 3156180, at *9 (S.D.N.Y. Aug. 8, 2022) (finding split where numerous challenged statements occurred in forum); *Funke*, 2003 WL 194204, at *4 (finding split where IPO and underwriting occurred in forum); *Mastercard Int'l, Inc. v. First Nat'l Bank of Omaha, Inc.*, 2002 WL 31521091, at *2 (S.D.N.Y. Nov. 12, 2002) (finding split without discussion or analysis); *SEC v. Yaroshinsky*, 2006 WL 8459557, at *6 (S.D.N.Y. Oct. 5, 2006) (finding split where alleged insider trades occurred in forum); *Geopharma,* 2005 WL 1123883, at *2-3 (finding split where challenged statements were spread throughout several districts); *Micromuse, Inc. v. Aprisma Mgmt. Techs., Inc.*, 2005 WL 1241924, at *4 (S.D.N.Y. May 24, 2005) (finding split where alleged patent infringement occurred in forum).

Despite Plaintiffs' attempt to downplay the similarities, this case is on all fours with *Zebra,* 2019 WL 3997354. In *Zebra*, the court transferred a securities class action from New York to the issuer's home district notwithstanding Plaintiffs' allegations that the "entire case" concerned statements about the integration of an acquiree in New York (the "EVM" unit) and the "conduct underlying the statements at issue likely took place" at the EVM. *Id.* at *6. Plaintiffs claim that *Zebra* is distinguishable because there, "evidence concerning [plaintiffs' allegations] would not necessarily be found in the transferor forum." Opp. at 17. But here too, Plaintiffs do not allege

that any fraudulent activity took place at the MVF and, as they admit, the key information coming out of the MVF relevant to their securities fraud claims was "rolled up" at Wolfspeed's North Carolina headquarters. *See supra* at 4. More importantly, the court in *Zebra* found that the existence of the EVM and its connection to the challenged statements "does not change the fact that the statements and omissions originated in [the issuer's home district]." 2019 WL 3997354, at *6; *see also*, *e.g.*, *Norfolk S.*, 2023 WL 5992266, at *5 (transferring securities fraud class action to issuer's home district because alleged fraudulent activity took place at issuer's corporate headquarters, even though underlying railroad accident to which challenged statements related took place in forum state); *Passmore*, 2024 WL 266531, at *6 (transferring securities fraud class actions to issuer's home district in Texas notwithstanding that "evaluating the truth or falsity of the [challenged] statements [] necessarily implicates events that occurred in Mobile [Alabama]" at oil refinery to which the challenged statements related).

These decisions fully apply here, and transfer is clearly appropriate.[8]

## CONCLUSION

Defendants Gregg A. Lowe and Neill P. Reynolds respectfully request that the Court grant the Motion.

---

[8] Several of the Section 1404(a) transfer analysis factors sometimes considered by courts may be neutral, but that does not alter the above analysis. While Plaintiffs note that Defendants did not address every single factor the Court may consider, *see* Opp. at 19-20, neither do they seriously argue, let alone offer any proof, that these factors weigh in Plaintiffs' favor.

10

Dated: July 22, 2025                          Respectfully submitted,


                                              /s/ Michael G. Bongiorno
                                              Michael G. Bongiorno (*admitted pro hac vice*)
                                                  New York Bar Number: 4347316
                                              Tamar Kaplan-Marans (*admitted pro hac vice*)
                                                  New York Bar Number: 4864385
                                              Nicole E. Prunetti (*admitted pro hac vice*)
                                                  New York Bar Number: 5570510

                                              WILMER CUTLER PICKERING HALE AND DORR LLP
                                              7 World Trade Center
                                              250 Greenwich Street
                                              New York, NY 10007
                                              Tel.: (212) 230-8800
                                              Fax: (212) 230-8888
                                              Michael.Bongiorno@wilmerhale.com
                                              Tamar.Kaplan-Marans@wilmerhale.com
                                              Nicole.Prunetti@wilmerhale.com

                                              *Counsel for Defendants Wolfspeed, Inc., Gregg A.*
                                              *Lowe, and Neill P. Reynolds*

11